IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

James I. Aiken, #294853,    )
                  )
              Petitioner,   )
                  )
     vs.             )
                  )
Warden Cecilia Reynolds,    )
                  )
             Respondent. )
                  )

Civil Action No. 6:15-3270-RBH-KFM

**REPORT OF MAGISTRATE JUDGE**

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to 28 U.S.C. § 2254.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND

The petitioner is currently incarcerated at Lee Correctional Institution in the South Carolina Department of Corrections (doc. 1). The petitioner was indicted by the Charleston County Grand Jury in May 2010 for first degree burglary (app. 528–29[1]). Public defenders Mary Beth Mullaney[2] and Lori Proctor represented the petitioner on the charge. Although the petitioner was represented at trial by two attorneys, his PCR application and petition appear to allege ineffective assistance of trial counsel only against Mullaney (doc. 1 at 13; app. 328). A jury trial was held on January 18–19, 2011, before the Honorable

---

[1]The appendix can be found at Docket Entry Numbers 24-1 through 24-3.

[2]This attorney is referred to as Mullaney and Mulvaney throughout the record; the undersigned will refer to her as Mullaney for clarity.

Markley Dennis, Jr.  The petitioner was convicted as charged (app. 283).  Judge Dennis imposed a sentence of 20 years imprisonment (app. 297).

***Direct Appeal***

The petitioner filed a notice of appeal on January 25, 2011 (app. 500). However, before briefing, the petitioner submitted an affidavit to the South Carolina Court of Appeals requesting to withdraw the notice (app. 300).  On September 2, 2011, the Court of Appeals granted the request and dismissed the appeal (app. 301).  The Court of Appeals issued the remittitur on September 22, 2011, noting that a petition for reinstatement of the appeal had not been filed (app. 302).

***PCR***

On October 13, 2011, the petitioner filed an application for post-conviction relief ("PCR") in which he raised the following claims:

> 1)  Counsel failed to adequately investigate the facts and circumstances surrounding the 911 call to applicant's mother's residence on, 1/9/10. Counsel's failure to conduct such an investigation deprived the jury of critical information relevant to an accurate assessment of applicant's guilt-or-innocence . . . .;
>
> 2) Counsel failed to investigate, develop, and present all available, relevant, and admissible exculpatory and/or mitigating evidence. As a result of Counsel's failure to uncover and present this evidence, Applicant's 20 yr. sentence for burglary 1st is unreliable;
>
> 3)  Counsel was ineffective for failing to interview and call witnesses who were not called during trial because Counsel "believed the witnesses would not add much to Applicant's defense." The defense witnesses Applicant sought during trial "would have added significantly to the credibility of Applicant's case." Counsel's conduct was also deficient for making harmful statements in closing arguments . . . ;
>
> 4) Trial counsel failed to investigate, discover, and present evidence that Applicant suffered mentally from impaired judgment. Counsel's failure to discover and present the evidence and the Applicant's 20 yr. sentence violates Atkins v. Virginia, 536 U.S. 304 (2002), and the 8th Amendment to the

2

United States Constitution because the Applicant was mentally impaired. . . .

5) Counsel was ineffective for failing to object to the solicitor's closing arguments. The solicitor's closing arguments were highly damaging to Applicant by unreasonably failing to preserve the issue for direct review and that this failure prejudiced the outcome of the case . . . .

(App. 307–08).

On February 13, 2012, the State made its return (app. 314–17). Justin Bamberg represented the petitioner in the action. PCR counsel filed an amendment to the application and a memorandum of law on November 16, 2012 (app. 319–44). PCR counsel framed the ineffective assistance of counsel claims as follows:

1. Failure to move to exclude or object to testimony regarding Morrison's missing wallet and mention of the wallet during closing arguments;

2. Failure to object to certain testimony by Morrison and failure to properly cross-examine him;

3. Failure to reasonably investigate evidence that would rebut evidence of Applicant's criminal intent;

4. Failure to request the State to advance a reason as to why it refused to accept the stipulation to Applicant's priors;

5. Failure to request a bifurcated trial on the issue of prior convictions;

6. Making improper comments during closing arguments; and,

7. Appellate counsel was ineffective for failing to fully inform him of the consequences of abandoning his direct appeal.

(App. 329).

An evidentiary hearing was convened on December 5, 2012, before the Honorable Roger M. Young, Sr. (app. 356). At the conclusion of the hearing, Judge Young took the matter under advisement and requested proposed orders from both parties. The judge noted the proposed orders would serve as counsel's closing argument (app. 463).

3

On December 31, 2012, Judge Young issued an order denying the petitioner's application and dismissing the action with prejudice (app. 512–27). The petitioner appealed the denial of relief.

### PCR Appeal

The petitioner was represented by Appellate Defender LaNelle Cantey Durant on appeal (doc. 24-4). On July 26, 2013, counsel filed a petition for writ of certiorari in the Supreme Court of South Carolina and raised the following issues:

> 1. The PCR court erred in failing to find trial counsel ineffective for not objecting to testimony by Morrison, whose home was allegedly burglarized by the petitioner, concerning his missing wallet. Petitioner was not charged with stealing the missing wallet so the testimony was prejudicial to petitioner because the state argued in his closing that the missing wallet was evidence that petitioner intended to rob Morrison.
>
> 2. The PCR court erred in failing to find trial counsel ineffective for making the improper comment in her closing argument that in a popularity contest, the jury would find Morrison more likeable than her client, Petitioner Aiken, and for telling the jury that Aiken returned the shoe expecting to receive a reward which painted Aiken in a bad light.

(*Id*. at 2).

The State made its return to the petition on December 12, 2013 (doc. 24-5). The Supreme Court of South Carolina denied the petition on September 11, 2014, (doc. 24-6), and issued the remittitur on September 20, 2014. The remittitur was filed on October 2, 2014 (doc. 24-7).

## FEDERAL PETITION

On August 19, 2015, the petitioner filed his Section 2254 petition (doc. 1). On January 28, 2016, the respondent filed a motion for summary judgment (doc. 25) and a return and memorandum (doc. 24). By order filed the same date, pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), the petitioner was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to

4

the motion (doc. 26).  After being granted three extensions of time, the petitioner failed to file a response.  On June 8, 2016, this court issued an order giving the petitioner through June 28, 2016 to file his response (doc. 41).  On July 1, the petitioner filed his response in opposition (doc. 43).   While untimely, the undersigned will consider the petitioner's response in opposition to the motion for summary judgment out of an abundance of caution for a *pro se* plaintiff.  The respondent filed a reply on July 11, 2016 (doc. 45).  On July 20, 2016, the petitioner filed his affidavit stating that he put the response in opposition to the motion for summary judgment in the prison mailbox on June 27, 2016 (doc. 46).

In his federal habeas corpus petition, the petitioner makes the following claims:

**Ground One:** Actual Innocence

*Supporting Facts:*
A. Petitioner Aiken was arrested for burglary after entering the bedroom of Michael Morrison in his home to return an expensive looking women's shoe that Aiken found in the front yard of the home.  The ensuing burglary charge included not only entering a dwelling without consent and with the intent to commit a crime, but violation of South Carolina Code Annotated Section 16-11-311(A)(2) which provides: A person is guilty of burglary in the first degree if the person enters a dwelling without consent and with the intent to commit a crime in the dwelling, and the burglary is committed by a person with a prior record of two or more convictions for burglary.

At trial, Aiken offered to stipulate to the prior conviction element of the offense.  The State refused to agree to such stipulation.  Later in the trial, the State introduced testimony of Sarah Lippe, an employee of Charleston County Clerk's Office.  The State also entered into evidence certified copies of the sentencing sheets, Ms. Lippe testified as to the name, date-of-birth, and charge contained on the sentencing sheets.

In his closing arguments to the jury, the prosecutor showed the jury Aiken's prior trouble with the law and suggested to the jury to consider his prior convictions for burglary to be persuasive that he is by propensity a probable perpetrator of the crime.  The name and nature of Aiken's prior offenses raised the risk of a verdict tainted by improper considerations.  Absent the

5

constitutional error, it is more likely than not that no reasonable juror would have found him guilty of burglary.

B.  When he was arrested, Aiken had a plastic bag with a designer thermal shirt and some copies of a line of greeting cards that Aiken produce, but no items belonging to Morrison. Later that day, Morrison realized his wallet was missing.  He called the police and told them his wallet was missing.  He never saw his wallet again.

During Aiken's preliminary hearing Officer Larry Duren testified that he did not charge Aiken with larceny of the missing wallet because there was no proof that Aiken had it or ever had possession of it.  At trial, the trial court made a preliminary or advisory opinion in limine regarding the evidentiary question concerning the missing wallet.  The trial court ruled that, the wallet was nothing to do with burglary.  The prosecutor in his closing argument, argued to the jury that, the missing wallet remains evidence to consider Mr. Aiken's criminal intent.  The record is sufficient on its face to make a showing that absent the constitutional error, it is more likely than not that no reasonable juror acting reasonably would have voted him guilty of burglary.

C.  Aiken's intent when entering the dwelling was the determinant element in his case.  At trial, Aiken sought to present a full defense, but prevented as a result of factors external to himself, as will be explained below.  At his post-conviction hearing, Aiken introduced testimony of two credible witnesses who would have supported his defense.  Aiken also entered into evidence documents which recorded an event that provided him with a lawful explanation consistent with his innocence.  Constitutional error deprived the jury of critical evidence that would have established Aiken's evidence.

D. The police reports in this case allege that Aiken opened a pill bottle and threw it into an opened dresser draw[er].  At trial, one year later Morrison's testimony changed significantly.  He testified that Aiken threw the pill bottle at him.  The prosecutor then entered into evidence photographs of Morrison's bedroom. The photos reveal that the pill bottle was sitting on the dresser where Morrison usually place[d] it.

In his written statement Morrison never reported that Aiken threw a pill bottle at him or otherwise.  The testimony was not only false, but also used by the prosecutor knowing it to be false.  The prosecutor failed to correct the false testimony when it appeared.  In his closing argument, the prosecutor argued to

6

the jury that, "When Mr. Aiken was confronted . . . with why you in my house, Mr. Aiken threw a pill bottle at him. The actions of a person are the best reflection of what he intended to do . . . look at exactly what happened, what took place, then make a decision."

In sum, considering all the evidence, on this issue, the introduction of the missing wallet, taken together with the critical evidence that was not presented at trial which would have established Aiken's innocence, in conjunction with Morrison's false testimony and the prosecutor's improper closing comments, as well as the admission of Aiken's prior convictions for burglary would prevent reasonable jurors from entertaining a reasonable doubt of his guilt. This is an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent.

**Ground Two:**    Aiken was denied his constitutionally guaranteed Sixth Amendment Right to a fair trial when his trial counsel failed to request that the State, advance a reason, other than to show propensity, why it refused to accept his offer to stipulate to the prior conviction element, when the sole purpose of the evidence was to prove the element of prior conviction.

*Supporting Facts*: Before trial, Aiken moved for an order requiring the State to refrain from mentioning—by reading the indictment, in opening statement, or closing argument—and to refrain from offering into evidence or soliciting any testimony from any witness regarding the prior convictions for burglary of the defendant. He offered to solve the problem here by stipulating and agreeing that the State has satisfied the element of prior conviction of the offense. He argued that the offer to stipulate to the fact of the prior conviction rendered evidence of the name and nature of the offense inadmissable under Rule 403 of the South Carolina Rules of Evidence, the danger being that unfair prejudice from that evidence would substantially outweigh its probative value.

The state refused to accept Aiken's offer to stipulate to the prior conviction element of the offense. Had trial counsel requested that the State advance a reason, other than to show propensity, as to why it refused to accept such stipulation, it would have been unable to do so. The trial court requested that trial counsel provide a case that has changed the law. Counsel failed to do so. Had counsel provided the court with relevant case law, counsel could have established a basis in law and fact that is not frivolous, which includes a good faith argument

for an extension, modification or reversal of existing law regarding the prior conviction element in burglary first degree cases.

There is a reasonable probability that absent the errors of counsel the outcome would have been different.

**Ground Three:** Mr. Aiken was denied his right to effective assistance of Counsel under the Sixth Amendment to the United States Constitution when trial [counsel] failed to make a motion in limine, to suppress or object to the wallet during trial or in closing arguments.

*Supporting Facts*: The evidence adduced during trial counsel pre-trial investigation established that Aiken was not charged with larceny for the missing wallet. During trial damaging testimony was presented regarding the missing wallet. As the case unfolded at trial, the trial court while denying counsel's motion for directed verdict, made a preliminary or advisory opinion on limine regarding the evidentiary question of the missing wallet to aid the parties in formulating their trial strategy. The trial counsel ruled that the wallet has a lot to do with larceny, but nothing to do with burglary.

In his closing argument to the jury, the prosecutor argued, among other things, that the missing wallet does remain evidence for you to consider Mr. Aiken's criminal intent. Had trial counsel made a motion in limine to suppress the missing wallet, there is a reasonable probability that the outcome would have been different.

**Ground Four:** Mr. Aiken was denied his guaranteed constitutionally protected Sixth Amendment right to effective assistance of counsel when trial counsel failed to present his only possible defense, although requested to do so, by him.

*Supporting Facts*: Counsel received an Inmate Request form from Aiken, requesting, among other things, an event that's documented regarding an incident that happened a week prior to his arrest, color photographs of the crime scene, and the results of latent testing conducted in connection with the pill bottle. Aiken placed special emphasis on this evidence and made several attempts in writing to counsel. Letter from trial counsel's file as well as, some included in the court files show a train of communication between Aiken's trial counsel and Aiken regarding this evidence, the letters reveal Aiken's persistent attempts to convince trial counsel to make the

8

evidence available to the defense and trial counsel's refusal to do so.

Had Mr. Goodwin and Ms. Aiken been called as witnesses at trial, Mr. Aiken would also have exercised his right to testify. He would have testified that when he found the woman's shoe in front of the house, coupled with the front door ajar, immediately his mind reflected upon the experiences he had encountered just the week before at his mother's house, and it is in this state of mind that he entered Morrison's home. Aiken would have testified further that when he entered Morrison's bedroom, Morrison's entire body was covered with the exception of his feet which were hanging off the bed. Having become frightened not knowing whether Morrison was dead or alive, Aiken dropped the shoe on the bedroom floor waking Morrison. This would have explained why Morrison thought he heard small things being moved around on his dresser. Had trial counsel presented Aiken's only possible defense, there is a reasonable probability of a different outcome.

**Ground Five:** Aiken's constitutionally guaranteed right to the effective assistance of counsel was violated when trial counsel damaged the defense case because the closing argument id not support Aiken's defense.

*Supporting Facts*: Trial counsel knew that intent was the determinative element whether Aiken would be found guilty or not. Trial counsel also knew that during her pre-trial investigation that the reason Aiken entered Morrison's home to return the shoe was because his mind was influenced by an incident that he experienced just a week before. Aiken asked trial counsel to present the defense, but she did not. In her closing argument to the jury, trial counsel stated that Aiken walked throughout the house looking for someone to return the shoe to seeking a reward.

Aiken's trial counsel also made a comparison between Aiken and Morrison when she told the jury that in a contest between Morrison is more likeable so he wins. Trial counsel showed Aiken in a very bad light. These comments showed Aiken as an opportunist trying to make money which supported the element of intent for burglary if he was that desperate for money. Absent the errors of trial counsel there is a reasonable probability that the outcome would have been different.

**Ground Six:** Mr. Aiken was denied his firmly established Fourteenth Amendment right to the Constitution of the United States when his trial was rendered fundamentally unfair as a

result of the State's presentation of false or misleading evidence to the jury.

*Supporting Facts*: The trial court excluded the missing wallet because it would involve evidence unfairly prejudicial to the burglary count. Despite, the trial court's ruling, the prosecutor, during closing argued, to the jury that "the missing wallet does remain evidence of Aiken's criminal intent." The prosecutor further argued that, "The law does not required that the State prove the wallet was taken." The prosecutor's closing argument flagrantly misstated the law and deprived Aiken of his right to a fair trial.

In addition to the argument discussed above, the prosecutor's closing also included the following argument, "When Mr. Aiken was confronted . . . with why you in my house, Mr. Aiken threw a pill bottle at him . . . the actions of a person are the best reflection of what he intended to do . . . look at exactly what happened, what took place, then make a determination . . ." The testimony was in fact misleading, the prosecution knowingly used said testimony and the subject testimony was material to Aiken's guilt or innocence.

**Ground Seven:** Mr. Aiken's Sixth Amendment right to effective assistance of counsel was violated when appellate counsel failed to fully inform him of the consequences in abandoning his direct appeal.

*Supporting Facts*: Appellate counsel never reviewed Aiken's trial transcript. After initiating his direct appeal, Aiken indicated to appellate counsel that he wanted to drop his direct appeal and proceed to PCR. Aiken was concerned about the time a direct appeal would take, as well as the availability of his witnesses should he be granted a new trial. Appellate counsel advised Aiken that he should wait until appellate counsel could read the trial transcript and advised him of the potential issues for direct appeal. Appellate counsel further informed Aiken that his right to raise any directly appealable issues would be waived.

August 2011, Aiken signed a sworn affidavit indicating that he desired to drop his direct appeal and had been informed that by doing so, he would forever waive those issues that could be raised on direct appeal.

Appellate counsel failed to fully inform Aiken of the consequences of abandoning his direct appeal. Aiken had the understanding that he could raise any available issue in PCR and was unaware that not all are PCR issues. While appellate counsel informed Aiken that any direct appeal issues would be waived, appellate counsel never informed Aiken that certain issues could not be raised in PCR. Appellate counsel was deficient in assuming that Aiken, who had no legal training, could appreciate the difference between waiving directly appealable issues and certain issues not qualifying as PCR

10

issues. This is a legal discrepancy that Aiken was not able to understand without the same having been explained to Aiken by the lawyer appointed to represent him.

Appellate counsel could not fully inform Aiken of the consequences of dropping his direct appeal if appellate counsel had never reviewed the trial transcript. It is unreasonable for an appellate attorney to allow Aiken to forever waive issues without having taken the time to investigate what those issues may have been. Aiken was prejudiced by appellate counsel's ineffectiveness. There exists an issue that, on appellate review, would have likely resulted in Aiken receiving a new trial. The facts are set forth in detail in ground one: (A) and ground two. This issue was best heard on direct appeal.

(Doc. 1 at 5, 16–26).

## APPLICABLE LAW AND ANALYSIS

### *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the

11

existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### Exhaustion

The respondent acknowledges that the grounds raised in the petition are exhausted and timely (doc. 24 at 6–8, 10).

### Non-Cognizable Claim

In Ground One, the petitioner claims he is actually innocent (doc. 1 at 5, 16-19). Federal habeas relief is available only on claims involving a "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254 (a). A claim of actual innocence does not present a recognized question of federal law. *Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."). Given that a freestanding claim of actual innocence has not been specifically recognized by the Supreme Court, the petitioner's claim of actual innocence should not be considered cognizable in federal habeas. *McQuiggin v. Perkins*, --- U.S. ---, 133 S. Ct. 1924, 1931 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."). To the extent that the petitioner asserts actual innocence to excuse any procedural bar, this issue will be discussed in the procedural bar section, infra.

### Procedural Bar

The respondent argues that Grounds Two, Four, Six, and Seven are procedurally barred (doc. 24 at 14–15, 17–18, 20–21). Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner

who seeks habeas corpus relief on an issue after he failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

If a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court has explained:

> [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

"[A] federal court ordinarily may not consider claims that a petitioner failed to raise at the time and in the manner required under state law unless 'the prisoner demonstrates cause for the default and prejudice from the asserted error.'" *Teleguz v. Pearson*, 689 F.3d 322, 327 (4th Cir. 2012) (quoting *House v. Bell*, 547 U.S. 518, 536 (2006)). To show cause, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," *Murray v. Carrier*, 477 U.S. 478, 488 (1986), or that "the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding." *Roach v. Angelone*, 176 F.3d 210, 222 (4th Cir. 1999). "Alternatively, Petitioner may prove that failure to consider the claims will result in a fundamental miscarriage of justice." *McCarver v. Lee*, 221 F.3d 583, 588 (4th Cir. 2000) (citing *Coleman v. Thompson*, 501 U.S. 722, 750

(1991)).  A fundamental miscarriage of justice equates to the conviction of someone who is actually innocent.  However, "actual innocence" requires "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Grounds Two, Four, and Seven were raised to and ruled upon by the PCR court (app. 329, 523, 525–26); however, these grounds were not presented to the Supreme Court of South Carolina in the petitioner's petition for writ of certiorari (*see* doc. 24-4). Because these grounds were not fairly presented to the Supreme Court of South Carolina, they are procedurally barred from federal habeas review absent a showing of cause and actual prejudice.  *See Coleman*, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977) (holding that absent a showing of cause and actual prejudice, a federal court is barred from considering the claim); *Matthews v. Evatt*, 105 F.3d 907, 915 (4th Cir. 1997) (in such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply).

In Ground Six, the petitioner alleges his trial was unconstitutionally unfair as a result of prosecutorial misconduct.  This issue may be raised on direct appeal; however, the petitioner voluntarily withdrew his direct appeal (app. 300–01).  Moreover, this issue was not raised to or ruled upon by the PCR court, and it was not raised in the petitioner's writ of certiorari.  Because this claim was not presented on direct appeal or in the petitioner's petition for writ of certiorari, it is procedurally barred from federal habeas review absent a showing of cause and prejudice.  *See Coleman*, 501 U.S. 722; *Wainwright*, 433 U.S. at 87; *Matthews*, 105 F.3d at 915.

### Cause and Prejudice

The petitioner argues that he can establish cause for any procedural default (doc. 43 at 3, 5–6).  In *Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012), the United States Supreme Court  carved out a "narrow exception" that modified the "unqualified statement in *Coleman* [501 U.S. at 754–55] that an attorney's ignorance or inadvertence in a

14

postconviction proceeding does not qualify as cause to excuse a procedural default." In *Martinez*, the Court

> read *Coleman* as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 133 S. Ct. 1911, 1918 (2013) (quoting *Martinez*, 132 S. Ct. at 1318–19, 1320–21).  The Court in *Martinez* also noted:

> When faced with the question whether there is cause for an apparent default, a State may answer that the ineffective-assistance-of-trial-counsel claim is insubstantial, i.e., it does not have any merit or that it is wholly without factual support, or that the attorney in the initial-review collateral proceeding did not perform below constitutional standards.

132 S. Ct. at 1319.

The petitioner has failed to establish cause for any procedural default. Grounds Two, Four, Six, and Seven were procedurally defaulted because they were not raised to the Supreme Court of South Carolina in the petitioner's petition for writ of certiorari. The *Martinez* exception does not extend to allegations of ineffective assistance of PCR appellate counsel. *See e.g., Crowe v. Cartledge*, No. 9:13–CV–2391-DCN, 2014 WL 2990493, at *6 (D.S.C. July 2, 2014) ("[I]neffective assistance of PCR appellate counsel is not cause for a default."); *Cross v. Stevenson*, No. 1:11–CV–02874-RBH, 2013 WL 1207067, at *3 (D.S.C. Mar. 25, 2013) ("*Martinez*, however, does not hold that the ineffective assistance of counsel in a PCR appeal establishes cause for a procedural default."). The Supreme Court expressly noted that its holding in *Martinez* "does not concern attorney errors in other kinds of proceedings, including appeals from initial-review

collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." *Martinez*, 132 S.Ct. at 1320. Therefore, the petitioner has not demonstrated cause for failing to raise these issues in his petition for writ of certiorari in the PCR appeal, and these grounds are procedurally defaulted.

To the extent that the petitioner intends to bring Ground Seven, which alleges ineffective assistance of appellate counsel, to establish cause to overcome the procedural bar for Ground Six, which alleges prosecutorial misconduct, that argument fails. As previously stated, prosecutorial misconduct can be raised on direct appeal. The petitioner voluntarily dismissed his direct appeal (app. 300–01). It has been generally held that *Martinez* does not apply to ineffective assistance of appellate counsel claims. *See Reed v. Stephens*, 739 F.3d 753, 778 n. 16 (5th Cir. 2014) (declining to consider ineffective assistance of appellate counsel under *Martinez*); *Hodges v. Colson*, 727 F.3d 517, 531 (6th Cir. 2013) (holding that "[u]nder *Martinez's* unambiguous holding our previous understanding of *Coleman* in this regard is still the law—ineffective assistance of post-conviction counsel cannot supply cause for procedural default of a claim of ineffective assistance of appellate counsel"); *Banks v. Workman*, 692 F.3d 1133, 1148 (10th Cir. 2012) (holding *Martinez* applies only to procedural default of a claim of ineffective assistance at trial, not to claim of ineffective assistance of appellate counsel). *But see Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1289 (9th Cir. 2013) (holding that *Martinez* applies where the underlying ineffective assistance of counsel is by appellate counsel). Therefore, the petitioner has not demonstrated cause for failing to raise this issue in his direct appeal, and this ground is procedurally defaulted.

### Actual Innocence

The petitioner also contends he can overcome the procedural default because he is actually innocent (docs. 1 at 16–19; 43 at 3–4, 24). "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually

innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  The Supreme Court has elaborated that

> a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims (here, ineffective assistance of counsel) on the merits notwithstanding the existence of a procedural bar to relief.  "This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons."
>
> . . . .
>
> . . . To invoke the miscarriage of justice exception . . . , a petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."

*McQuiggin,* 133 S. Ct. at 1935 (quoting *Herrera*, 506 U.S. at 404; *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Here, the petitioner has failed to make the necessary showing of actual innocence.  The petitioner argues that the prosecutor's closing argument at trial unfairly prejudiced the minds of the jurors by referencing the victim's missing wallet because the trial court ruled that the wallet was not related to the burglary (doc. 1 at 17).  The petitioner states that he sought to enter another defense for his actions but that Mullaney would not present his requested defense (*id*. at 18).  Finally, the petitioner asserts that the victim made inconsistent statements regarding a pill bottle that was on his dresser when the petitioner entered his bedroom (*id*.). The petitioner argues that this evidence would have shown his innocence if it had been presented at trial (*id.* at 19).   Without more from the petitioner, such as new actual evidence, the court cannot conclude that the petitioner has established that he is actually innocent—i.e., that no reasonable juror would have convicted him.  *See House v. Bell*, 547 U.S. 518, 536–37 (2006) (holding that a petitioner claiming actual innocence "must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'"

17

(emphasis added) (quoting *Schlup*, 513 U.S. at 327)). As a result, the petitioner has not overcome the procedural bar for Grounds Two, Four, Six, and Seven.

### *Ineffective Assistance of Counsel*

Grounds Three and Five raise ineffective assistance of counsel claims and are reviewable on their merits.  To be entitled to relief on an ineffective assistance claim, the petitioner had to have shown in state court that (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that but for counsel's error, the result of that proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–94 (1984).  *Strickland* does not guarantee perfect representation, only a "'reasonably competent attorney.'" *Id.* at 687 (quoting *McMann v. Richardson*, 397 U. S. 759, 770 (1970)).  There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case. *Id.* at 690.

The review of ineffective assistance of counsel claims in federal habeas is not simply a new review of the merits; rather, habeas review is centered upon whether the state court decision was reasonable. *See* 28 U.S.C. § 2254(d).  Additionally, each step in the review process requires deference—deference to counsel and deference to the state court that previously reviewed counsel's actions:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011)(internal citations omitted).

18

**Ground Three**

In Ground Three, the petitioner argues that counsel was ineffective for failing to seek a motion in limine to prevent the victim from testifying about his missing wallet (doc. 1 at 20–21). Here, the PCR court addressed Mullaney's performance under the standard set forth in *Strickland* (app. 520–21). The PCR court found:

> [T]he Applicant failed to meet his burden of proving trial counsel should have moved to exclude or object to testimony regarding the victim's missing wallet. This Court finds that trial counsel's performance was not deficient for failing to object to this testimony at trial. This Court further finds that there was no legal basis to object to or exclude the victim's testimony about the missing wallet. This Court also finds that no prejudice resulted from the jury being presented testimony about the missing wallet. Trial counsel gave credible testimony that she was able to use the testimony to the Applicant's benefit at trial. This Court finds that this allegation is without merit and trial counsel provided reasonably effective assistance under prevailing professional norms.

(App. 521). The PCR court's denial of the petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. The PCR court concluded that the petitioner failed to establish that Mullaney's representation fell below an objectively reasonable standard or any resulting prejudice (app. 524–25).

The record supports the PCR court's determination. At the PCR hearing, Mullaney testified that the missing wallet was not the only evidence against the petitioner; she noted that the victim also testified that he awoke to the sounds of items being moved on his dresser and "it appear[ed] that [the petitioner] was rifling through his dresser drawers" (app. 377, 383). Mullaney stated that the testimony regarding the wallet was not testimony but was a recollection of what the victim recalled; therefore, she felt there was no legal

19

basis to exclude the testimony (app. 378).  Mullaney testified that, at trial, she argued that the victim could have just misplaced his wallet and it was never found on the petitioner (app. 380).  There is no evidence that the PCR court's decision was contrary to or an unreasonable application of applicable Supreme Court precedent.  Therefore, the petitioner is not entitled to habeas corpus relief on this ground.

### Ground Five

In Ground Five, the petitioner alleges that Mullaney's closing argument did not support his defense and that this constituted ineffective assistance of counsel (doc. 1 at 23).  Here, the PCR court addressed Mullaney's performance under the standard set forth in *Strickland* (app. 520–21).  The PCR court found:

> [T]he Applicant failed to meet his burden of proving trial counsel should not have made improper comments during closing arguments.  This Court finds that trial counsel's closing argument was proper.  This Court finds that trial counsel's closing argument supported the defense presented at trial that the Applicant did not have the criminal intent to commit burglary.  This Court finds that this allegation is without merit and trial counsel provided reasonably effective assistance under prevailing professional norms.

(App. 524).  The PCR court's denial of the petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent.  Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.  The PCR court concluded that the petitioner failed to establish that Mullaney's representation fell below an objectively reasonable standard or any resulting prejudice (app. 524–25).

The record supports the PCR court's determination.  At the PCR hearing, the petitioner testified that he believed Mullaney's closing arguments portrayed him in a "real bad light" (app. 458). However, Mullaney testified that she believed her argument that the

20

petitioner may have been looking for a reward by returning the shoe helped "reconcile" the evidence and supported the defense (app. 409–12). She noted that the petitioner had admitted to being in the victim's bedroom and she needed to explain why someone would go into another person's bedroom on a Saturday morning (app. 421). She testified that she believed her statement regarding the popularity of the petitioner helped Mullaney's credibility with the jury, which helped her to make her case (app. 412). Further, the PCR court found Mullaney's testimony was credible and found that the petitioner's testimony was not credible. (app. 521). Thus, the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent. *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." (internal citation omitted)). Accordingly, the petitioner is not entitled to habeas corpus relief on this ground.

### CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 25) be GRANTED and the petition (doc. 1) be DENIED.

s/ Kevin F. McDonald
United States Magistrate Judge

July 26, 2016
Greenville, South Carolina

21

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court**
**United States District Court**
**300 East Washington Street — Room 239**
**Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).